1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN MARTIN SEALEY,<br><br>Plaintiff,<br><br>v.<br><br>DUSTIN FAGUNDES, et al.,<br><br>Defendants. | Case No. 1:23-cv-00253-KES-EPG (PC)<br><br>ORDER (1) DIRECTING CLERK OF COURT TO FILE DEPOSITION TRANSCRIPT UNDER SEAL; AND (2) REQUIRING SETTLEMENT CONFERENCE REPORT FOURTEEN DAYS AFTER RULING ON MOTIONS FOR SUMMARY JUDGMENT BY DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED, IN PART, AND DENIED IN PART; FURTHER RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>(ECF Nos. 47, 48)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

## I.    INTRODUCTION

Plaintiff Dean Martin Sealey is a state prisoner proceeding *pro se* in this civil rights action filed under 42 U.S.C. § 1983.[1] The complaint alleges that Plaintiff was severely injured during the course of his prison employment after being directed to clean machinery, even though he had no training, experience, or supervision.

Both parties now move for summary judgment. Defendants Dustin Fagundes and Steve Souza argue that (1) they are not liable because Plaintiff was injured because he defied his training, (2) they are entitled to qualified immunity, and (3) Souza was not responsible for

---

[1] Plaintiff has paid the filing fee and is not proceeding *in forma pauperis*.

1

Plaintiff's training or supervision. (ECF No. 48-1, pp. 1-2). Plaintiff argues that the undisputed facts show that Defendants acted with deliberate indifference to his safety needs by directing him to clean machinery without showing him how to properly do so. (ECF No. 47).

For the reasons given below, it is recommended that Defendants' motion be granted to the extent that Defendant Souza be granted summary judgment and denied to the extent that it requests that Defendant Fagundes be granted summary judgment. It is also recommended that Plaintiff's motion for summary judgment be denied.

## II.    BACKGROUND

### A.  The complaint

This action proceeds on Plaintiff's allegations that Defendants were deliberately indifferent to his safety needs under the Eighth Amendment. (ECF Nos. 5, 7). The underlying incident occurred at California Substance Abuse Treatment Facility and State Prison (SATF)

In April 2022, Plaintiff was assigned to the California Prison Industry Authority (PIA). His job title was package handler. In August 2022, Plaintiff's supervisor, Defendant Fagundes, ordered Plaintiff to work in the peanut butter and jelly section.

On this day, Defendants Fagundes and Souza had decided to experiment with processing hummus through the jelly processing system. However, this led to the entire system being clogged. Plaintiff and another inmate were given a direct order to clean inside the pipes and pump. However, Defendants never trained Plaintiff on how to clean the machinery.

While trying to remove a gasket from the pump, Plaintiff's left index finger came into contact with a spinning propeller, causing Plaintiff's finger to be shredded and amputated.[2]

### B.  Motions for Summary Judgment

Plaintiff filed his motion for summary judgment on August 28, 2024. (ECF No. 47). Defendants filed their motion for summary judgment on September 16, 2024. (ECF No. 48). Each party has opposed the other party's motion. (ECF Nos. 48, 50, 51). Accordingly, the parties' motions for summary judgment are ripe for decision.

\\\

---

[2] Both parties acknowledge elsewhere in the record that Plaintiff's finger only needed to be partially amputated. (Plaintiff's deposition, p. 62; ECF No. 48-2, p. 4).

1    **III.    LEGAL STANDARDS**

2         **A.  Summary Judgment**

3         A party may move for summary judgment on a claim or defense. Fed. R. Civ. P. 56(a).

4    Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to

5    any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

6    56(a); *Albino v. Baca* ("*Albino II*"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is

7    a genuine dispute about material facts, summary judgment will not be granted."). A party

8    asserting that a fact cannot be disputed must support the assertion by "citing to particular parts

9    of materials in the record, including depositions, documents, electronically stored information,

10   affidavits or declarations, stipulations (including those made for purposes of the motion only),

11   admissions, interrogatory answers, or other materials, or showing that the materials cited do not

12   establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

     admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

13        As for Plaintiff's motion for summary judgment, because he "will have the burden of

14   proof on an issue at trial, [he] must affirmatively demonstrate that no reasonable trier of fact

15   could find other than for [him]." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.

16   2007). As for Defendants' motion for summary judgment, the following standards apply:

17            A moving party without the ultimate burden of persuasion at trial—usually, but
             not always, a defendant—has both the initial burden of production and the
18           ultimate burden of persuasion on a motion for summary judgment. *See* 10A
             Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice
19           and Procedure § 2727 (3d ed.1998). In order to carry its burden of production,
             the moving party must either produce evidence negating an essential element of
20           the nonmoving party's claim or defense or show that the nonmoving party does
             not have enough evidence of an essential element to carry its ultimate burden of
21           persuasion at trial. *See High Tech Gays v. Defense Indus. Sec. Clearance Office*,
             895 F.2d 563, 574 (9th Cir.1990). In order to carry its ultimate burden of
22           persuasion on the motion, the moving party must persuade the court that there is
             no genuine issue of material fact. *See id.*
23

24   *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

25        If a party moving for summary judgment "carries its burden of production, the

26   nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. And "if

27   the nonmoving party produces enough evidence to create a genuine issue of material fact, the

28

nonmoving party defeats the motion." *Id.*

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986). Further, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

In reviewing cross-motions for summary judgment, a court is required to consider each motion on its own merits. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

### B.  Deliberate Indifference

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995).

Two requirements must be met to show an Eighth Amendment violation. *Farmer*, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (citation and internal quotation marks omitted). Second, "a prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims "is one of deliberate indifference." *Id.* (citations and internal quotation marks omitted). Prison officials act

with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006).

"More specifically, the Eighth Amendment is implicated in the prison work context only when a prisoner employee alleges that a prison official compelled him to 'perform physical labor which [was] beyond [his] strength, endanger[ed his life] or health, or cause[d] undue pain.'" *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir.1994) (per curiam)).

## IV.   DISCUSSION

### A.  Undisputed Facts

The parties do not dispute the following facts. Plaintiff was an inmate at SATF during the time of the incident. (ECF No. 48-2, p. 1; ECF No. 47, p. 5). In April 2022, Plaintiff started a job with the PIA working as a package handler. (ECF No. 48-2, p. 2; ECF No. 47, p. 5). Defendant Fagundes was Plaintiff's supervisor. (ECF No. 48-2, p. 1; ECF No. 47, p. 5). On August 31, 2022, Defendants tried to process hummus through machinery, leading to a clog in the system. (ECF No. 48-2, p.21; ECF No. 47, p. 7).

Fagundes, in at least some manner, instructed Plaintiff and other workers to unclog the system. (ECF No. 48-2, p. 3; ECF No. 47, p. 7). In the process of trying to remove a gasket from a pump, Plaintiff's left index finger was injured, requiring a partial amputation. (ECF No. 48-2, p. 4; ECF No. 47, pp. 13-14; Plaintiff's deposition, p. 62).

### B.  Summary of the Parties' Positions

The crux of the dispute comes down to whether Defendants were deliberately indifferent to Plaintiff's safety needs because they failed to properly train and supervise him in cleaning the machinery.

Defendants' motion for summary judgment and opposition to Plaintiff's motion argues as follows:

> Sealey's training materials prove that Sealey knew not to put his hand into a running machine, and Defendants were not aware of a serious risk of harm because they could not have known that Sealey would defy his training

especially where, as here, Sealey was instructed to perform a task that did not require him to place his hand inside a machine. Moreover, Sealey's claims fail for lack of causation because he was trained not to put his hand in moving machinery and it was unforeseeable that he would defy that training. Defendants are also entitled to qualified immunity.

(ECF No. 48-1, pp. 1-2).

In support of their motion for summary judgment, Defendants provide their own declarations, safety instructions that Plaintiff was purportedly provided, Plaintiff's medical records, and excerpts from Plaintiff's deposition.[3]

Plaintiff's motion for summary judgment and opposition to Defendants' motion contends that he was never properly trained on how to clean the machinery. (ECF Nos. 47, 50). Rather, he states that he was left with another inmate to train and supervise him, which the inmate failed to do.

In support of his arguments, Plaintiff offers his own declaration, statements from other inmates, discovery responses, purported photographs of the machinery at issue, and documents he received in connection with his job (including safety instructions).

**C.  Analysis**

The Court considers the arguments as to each Defendant separately, starting with Fagundes, whom the parties agree was Plaintiff's supervisor in his PIA job. [4]

\\\

\\\

---

[3] Defendants have also provided the Court with the entire transcript of Plaintiff's deposition as required by Local Rule 133(j). (ECF No. 49). An entire deposition transcript "will [not] become part of the official record of the action absent order of the Court." Local Rule 133(j). Because the Court has quoted from multiple pages of the deposition transcript that are not yet part of the record, the Court will direct the Clerk of Court of file the entire deposition transcript for the record, but under seal.

[4] As an initial matter, Defendants argue that "Sealey's motion for summary judgment should be denied as procedurally deficient . . . [because it] does not include a statement of undisputed facts properly supported by evidence as required by Federal Rule of Civil Procedure 56(c) and Civil Local Rule 260(a)." (ECF No. 48-1, p. 6). The Court rejects this argument. First, although Plaintiff has failed to set forth a statement of undisputed facts under Local Rule 260(a), he otherwise provides evidence with his filings and sufficiently explains why he believes that the evidence supports his factual positions. The Court also takes into consideration that Plaintiff is *pro se* and incarcerated. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988) ("This court recognizes that it has a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements. Thus, for example, pro se pleadings are liberally construed, particularly where civil rights claims are involved.") (internal citations omitted).

**1. Fagundes**

**a. Defendants' motion for summary judgment**

The Court begins with Fagundes' motion for summary judgment, which argues that the undisputed facts establish that he was not deliberately indifferent to Plaintiff's safety needs and that he is entitled to qualified immunity. (ECF No. 48-1). Generally, Fagundes argues that he is not liable because Plaintiff was provided with training and instructions that made clear that Plaintiff was not supposed to put his hands in moving machinery.

**i. Fagundes' argument**

Fagundes provides a declaration stating that Plaintiff received the following training and instructions:

- Sealey received the California Prison Industry Authority Food and Beverage Packaging Safety Instructions, which provide that factory workers should "[k]eep hands and fingers away from belts, pulleys, and moving parts," and that "[r]epair and maintenance work shall only be performed by the designated persons."

- Sealey received the Lockout/Tagout Preventing Machine Suprises training, which instructs factory workers to turn machines off before maintaining or repairing them and that failure to do so could result in injury.

- Sealey took the California Prison Industry Authority – Staff/Inmate Orientation SATF General Safety Quiz. Sealey marked true the following statement: "You should never oil, adjust, or clean machinery while it is in motion."

- [Regarding the incident at issue, Fagundes] instructed Sealey and two other senior factory workers to begin the [Clean-in-Place] CIP process and returned to his office.

- The process is called "Clean-in-Place" because the machine is cleaned with all the pipes and pieces of the machine left in place. The CIP process runs hot water through the machine on a cycle to clean out the pipes. The steps of running a CIP are: (1) fill the kettle with water using a hose; (2) open the kettle valve; (3) flip a switch to begin the flow of hot water through the system; and (4) observe the draining water to confirm that it runs clear. The machine is powered on during the CIP process.

- Because the CIP process does not include dismantling the machine or placing your hands in the machine, direct supervision is not required. Factory workers run the CIP process daily to ensure the machines in the factory are cleaned and sanitized to process food. Workers performing the CIP process

are trained to do so "on-the-job" by more senior workers.

(ECF No. 48-2, p. 2) (internal citation to exhibit numbers omitted).

Based on these facts, Fagundes argues as follows:

Fagundes [was] not deliberately indifferent because [he] did not know Sealey would stray from the CIP process, defy his training, and put his hand in moving machinery without authorization.

As stated above, the CIP process does not require anyone to put their hands inside the machine or to dismantle the machine in any way. Sealey was also specifically trained not to put his hands inside a machine while it was on because it could cause injury. Because of Sealey's training and instruction to perform the CIP process, Fagundes [] did not know of or consciously disregard a risk of injury to Sealey when performing the CIP process. And even if [he] had known that Sealey was going to put his hand in the machine, [he] would not have known or disregarded a risk that he would place his hands in moving machinery because of Sealey's training.

Accordingly, Fagundes [was] not deliberately indifferent to a serious risk of harm to Sealey.

(ECF No. 48-1, p. 11) (internal citations omitted).

### ii. Plaintiff's argument

Plaintiff's account of events differs markedly from Fagundes'. (ECF No. 50). In his declaration, he states that when he was hired to work for PIA—roughly four months before the incident—he was hired as a package handler (also referred to as a food packer). (*Id.* at 2). At his deposition, Plaintiff described this job as follows:

They got a -- food -- a jelly packing machine that packaged the little small jelly packs. When that machine kicks all the jelly packs into a box -- small box, fill it up. I would take the box, put it on the conveyor belt, push it through the taper and stack it on a pallet. Fifty boxes to a pallet. Once that 50 boxes is done, I take the Reno wrap – plastic wrap and wrap it around there to secure it. And then I will get a pallet jack, lift it up and take it to a designated area that they want me to take it to. That was my job. That was sitting next to the jelly packing machine, and, you know, stacking boxes on the pallet, and that's what I was doing all day.

(Plaintiff's deposition, p. 17). This job description is supported by a document that Plaintiff provides called "Inmate Job Description." (ECF No. 47) (stating, among other things, that, "Workers may stack, separate, count, pack, wrap, and weigh products. Workers will be responsible for removing sealed bread packages from the out-feed conveyor.").

With these duties in mind, Plaintiff states that he was not required to perform the CIP

process as part of his package handling position. (ECF No. 50, p. 6). Moreover, while he acknowledges receiving some of the safety documents that Fagundes discusses in his declaration, Plaintiff states that the lockout/tagout document—which concerns turning off a machine—was never presented to him. (*Id.* at 3). In support of this argument, Plaintiff correctly notes that the employee and supervisor signature lines are blank on this form.[5] (*Id.*; ECF No. 48-3, p. 6).

Relatedly, Plaintiff states that when Fagundes instructed him to perform the CIP process, he understood it to mean "clean inside the pipe and pumps." (ECF No. 50, p. 4). Plaintiff claims that he was never trained on the CIP process and, after Fagundes ordered him to perform the CIP process, he explained to Fagundes that he was not familiar with it. (*Id.; see* Plaintiff's deposition, p. 35 – Plaintiff stating that he told Fagundes he was "not familiar with all that stuff [in reference to the CIP process] and Fagundes responded that it was "a good time for [Plaintiff] to train with [a fellow inmate]"). However, rather than training him, Fagundes directed him to work with two inmate workers. (ECF No. 50, p. 4).

Plaintiff's recollection of never being trained by Fagundes on the CIP process is supported by Fagundes' own declaration and discovery responses. While Fagundes states that he directed Plaintiff to perform the CIP process—and his declaration explains the steps of the process and that it does not involve working inside the machinery—Fagundes never states that he explained to Plaintiff what the steps of the CIP process are, nor how Plaintiff was not supposed to put his hands inside the machinery during the process. (ECF No. 48-3, p. 3). And although Fagundes states that "[w]orkers performing the CIP process are trained to do so 'on-the-job' by more senior workers," he never states that Plaintiff was trained on the CIP process by a senior worker. Plaintiff stated at his deposition that inmate workers cannot be trusted to train "because they are not dedicated to training nobody." (Plaintiff's deposition, p. 45). Further, Fagundes admitted in his discovery responses that "no [CIP training] written document existed at the time of the incidents at issue in this lawsuit." (ECF No. 47, p. 34).

Additionally, Plaintiff contends that Fagundes instructed him, via communication with one of the inmates that Plaintiff was training with, "to process the last two pipes and check the

---

[5] The Court notes that the other safety documents are signed by Plaintiff. (ECF No. 48-3, pp. 5, 7).

gasket." (Plaintiff's deposition, p. 38). He states that he follows such instruction because not complying could lead to him getting fired or a disciplinary action. (Plaintiff's deposition, p. 46). This assertion is supported by the "Inmate Job Description" document that Plaintiff provides, which states that refusal to meet expected job standards "could result in disciplinary action and unassignment." (ECF No. 47, p. 47).

Moreover, Plaintiff states that, when he went to check the gasket on the machine, he was expecting a gasket that contained a screen. (Plaintiff's deposition, p. 43). However, Fagundes changed the gasket to one without a screen—an "open gasket"—to allow for a better flow for processing hummus in the machinery. (*Id.* at 49). However, "[Fagundes] did not tell the workers." (*Id.*).

Plaintiff did not know the pump was on when he was working on it "because the pump is completely qu[ie]t." (ECF No. 50, p. 6). Further, because of the position of the machinery, Plaintiff could not clearly see the gasket when he went to remove it. (Plaintiff's deposition, pp. 54-55). He reached in to pull out the stuck gasket in the pipe, which is when his finger slipped into the pump of the machinery, causing his finger to be injured. (*Id.* at 55-57).

Lastly, although Plaintiff acknowledges that maintenance workers are supposed to clean machinery, he states that, because they take too long to do so, staff "recklessly use[] inmates to do that" in order to make sure production continued. (*Id.* at 75).

Based on these facts, Plaintiff argues that Fagundes misrepresents the evidence. Generally, he argues that he was never trained on the proper cleanup procedure and it was not clear how to perform it without training, especially given his role as a package handler. Thus, Fagundes was deliberately indifferent to his safety needs by failing to train and supervise him.

### iii.   Analysis

With the parties' competing arguments in mind, the Court concludes that Fagundes has failed to meet his initial burden of showing that he is entitled to summary judgment. *Nissan Fire*, 210 F.3d at 1102. Notably, the evidence discussed above reveals multiple genuine issues of material fact.

Most importantly, the parties dispute the key issue here—whether Plaintiff was ever properly trained to work on the machinery. Among other things, the parties dispute whether

1    Plaintiff knew the CIP process and was ever instructed on the lockout/tagout procedure.

2           Fagundes' reply argues that, whether Plaintiff received certain training is ultimately

3    immaterial, because there is no dispute he received at least some other training, *e.g.*, like to

4    keep his hands away from moving parts. (ECF No. 51, p. 2). The Court does not find this

5    argument convincing.

6           Notably, viewing the evidence in a light most favorable to Plaintiff, as the Court must,

7    Fagundes directed Plaintiff and fellow inmates to work on the internal portions of the

8    machinery, *i.e.*, to check the gasket from the pump that ultimately caused Plaintiff's injury. *See*

9    *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987)

10   ("Therefore, at summary judgment, the judge must view the evidence in the light most

11   favorable to the nonmoving party: if direct evidence produced by the moving party conflicts

12   with direct evidence produced by the nonmoving party, the judge must assume the truth of the

13   evidence set forth by the nonmoving party with respect to that fact."). As Fagundes repeatedly

14   argues that such an action would be contrary to safety training, he would have known that

15   ordering Plaintiff to do this would pose an excessive risk to Plaintiff's safety. And according to

16   Plaintiff, ignoring workplace instructions could lead to disciplinary action against him.

17   Moreover, Fagundes' further enhanced the danger present in the task by using an open gasket

18   (*i.e.*, one without a screen) and without telling the inmates whom he instructed to work on the

19   machinery. This all occurred despite Plaintiff telling Fagundes that he did not know the proper

20   cleaning process; Fagundes being responsible for Plaintiff's training; Fagundes admitting that

21   he did not directly train Plaintiff on the CIP process; and Fagundes leaving Plaintiff's training

22   and supervision to another inmate, whom Plaintiff contends was not up for the task.

23          In light of such facts, construed in favor of Plaintiff, a jury could reasonably find that

24   Fagundes was deliberately indifferent to Plaintiff's safety needs despite Plaintiff receiving

25   some contrary instruction, *e.g.*, not to put his hands near moving parts. *Anderson*, 477 U.S. at

26   248 ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is,

27   if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

28   Accordingly, the Court will recommend that Defendants' motion for summary judgment be

     denied to the extent that Fagundes requests summary judgment based on the arguments

1  discussed above.

2  **b.  Qualified immunity**

3  Fagundes also argues that he is entitled to qualified immunity because Plaintiff has

4  failed "to point to case law showing that the right was clearly defined at the time of the alleged

5  violation." (ECF No. 51, p. 5).

6  "The doctrine of qualified immunity protects government officials 'from liability for

7  civil damages insofar as their conduct does not violate clearly established statutory or

8  constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*,

9  555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

10  In determining whether a defendant is entitled to qualified immunity, the Court must

11  decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right;

12  and (2) whether that right was clearly established at the time of the officer's alleged

13  misconduct. *Pearson*, 555 U.S. at 232. To be clearly established, a right must be sufficiently

14  clear "that every 'reasonable official would [have understood] that what he is doing violates

15  that right.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2090 (2012) (quoting *Al–Kidd*, 563 U.S. at

16  741) (alteration in original). This immunity protects "all but the plainly incompetent or those

17  who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

18  > Binding caselaw "need not catalogue every way in which" prison conditions can
   > be constitutionally inadequate "for us to conclude that a reasonable official
19 > would understand that his actions violated" an inmate's rights. *Castro v. County
   > of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (en banc). Rather, "a right
20 > is clearly established when the 'contours of the right [are] sufficiently clear that
   > a reasonable official would understand that what he is doing violates that right.'"
21 > *Id.* (alteration in original) (quoting *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th
   > Cir. 2003)).
22

23  *Hampton v. California*, 83 F.4th 754, 769 (9th Cir. 2023).

24  With these standards in mind, and for the reasons discussed above, the facts could

25  establish a constitutional violation.

26  Further, considering the evidence in a light most favorable to Plaintiff, establishes the

27  following: Fagundes directed Plaintiff to clean dangerous machinery that was the responsibility

28  of maintenance workers—including checking the gasket on a pump—despite not telling

1  Plaintiff that he had installed a more dangerous "open gasket," and Fagundes did not train or

2  supervise Plaintiff, who explained that he did not know how to properly clean the machinery.

3       These facts, if true, violate the following clearly established law:

4      [P]rison officials supervising [an inmate worker] have a constitutional obligation
   to take reasonable measures to guarantee his safety. *See Osolinski,* 92 F.3d at 937.

5  Not every injury that a prisoner sustains while in prison represents a constitutional
   violation. A prisoner claiming an Eighth Amendment violation must show (1) that

6  the deprivation he suffered was "objectively, sufficiently serious;" and (2) that
   prison officials were deliberately indifferent to his safety in allowing the

7  deprivation to take place. *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. More
   specifically, the Eighth Amendment is implicated in the prison work context only

8  when a prisoner employee alleges that a prison official compelled him to
   "perform physical labor which [was] beyond [his] strength, endanger[ed his life]

9  or health, or cause[d] undue pain." *Berry v. Bunnell,* 39 F.3d 1056, 1057 (9th

10 Cir.1994) (per curiam); *see also Wallis v. Baldwin,* 70 F.3d 1074 (9th Cir.1995)
   (analyzing under the Eighth Amendment a prisoner's claim that his health was

11 endangered when he was forced to remove asbestos without protective gear).

12 Morgan v. Morgensen, 465 F.3d 1041, 1045, (9th Cir. 2006)  opinion amended on reh'g (9th

13 Cir., Nov. 30, 2006, No. 04-35608) 2006 WL 3437344 (prison supervisor's alleged actions of

14 compelling prisoner to perform work that endangered his health and caused undue pain violated

15 prisoner's Eighth Amendment rights). *See also Hoa v. Cate*, No. C-12-2078 EMC, 2014 WL

16 2186626, at *7 (N.D. Cal. May 23, 2014) ("From *Morgan,* a reasonable officer would have

17 understood that compelling an inmate to continue working under hazardous conditions, after

18 the inmates raise serious concerns whether it was safe to do so, violated his Eighth Amendment

19 right 'not to be compelled to perform work that endangered his health and caused undue

20 pain.'") (internal citation to *Morgan* omitted).

21     Accordingly, the Court will recommend that Defendants' motion for summary judgment

22 be denied to the extent that Fagundes requests summary judgment based on qualified immunity.

23     **c.  Plaintiff's motion for summary judgment**

24     Having addressed Fagundes' motion for summary judgment, the Court turns to

25 Plaintiff's motion, with Plaintiff now bearing the burden of showing that he is entitled to

26 summary judgment. In arguing that he is entitled to summary judgment, Plaintiff relies on the

27 same arguments and evidence discussed above in opposing Fagundes' motion for summary

28 judgment. Likewise, Fagundes relies on the same arguments and evidence in support of his

motion for summary judgment in arguing that Plaintiff is not entitled to summary judgment; primarily, that Plaintiff was properly trained and defied his safety training in working on the internal parts of the machinery that led to his injury.

For the reasons described above in connection with Fagundes' motion, the Court will deny Plaintiff's motion. Importantly, there are genuine disputes of material fact precluding summary judgment, *e.g.*, whether Plaintiff was in fact properly trained to work on the machinery and whether he followed the safety instructions he received or diverted from them. Because Plaintiff cannot "affirmatively demonstrate that no reasonable trier of fact could find other than for [him]," the Court will recommend that Plaintiff's motion for summary judgment be denied as to Fagundes. *Soremekun*, 509 F.3d at 984.

### 2. Souza

Separately, defendant Souza asserts in his motion for summary judgment, with the support of his declaration, that he was a superintendent overseeing the entire food packaging operation at SATF. (ECF No. 48-4, p. 2). In this role, he oversees other supervisors, among other tasks, but does "not supervise or train inmate workers." (*Id.*). Rather, "industrial supervisors supervise and train inmate workers." (*Id.*). And he specifically asserts that he "did not train or supervise Sealey on August 31, 2022, or at any time." (*Id.*). Further, while Souza concedes that both he and Fagundes were responsible for directing workers to run hummus through the machinery on August 31, 2022, he states that he "left work after the workers began processing hummus through the machine," and "was not present when Sealey was instructed to perform [t]he CIP process." (*Id.*). Accordingly, he claims that, because he had no involvement with the underlying incident, he cannot be held liable.

Plaintiff does not meaningful dispute Souza's factual assertions and largely confirms them. For example, in his deposition, Plaintiff states that "We didn't have any interaction with [Souza]. He's the superintendent. He's, like, high up. Everything, we -- we interact with [Fagundes]." (Plaintiff's deposition, p. 25). Further, Plaintiff states that he saw Souza in the morning of August 31 but did not see him again later that day. (*Id.*). And he states that Fagundes was the only person, beside workers not implicated here, that could swap out the

gasket. (*Id.* at 58-59).

Plaintiff tries to argue that Souza is liable because he instructed him to run hummus through the machinery. (ECF No. 50, p. 12). However, this fact is ultimately immaterial because Plaintiff's running hummus through the machinery is not what led to his injury; rather, it was his subsequent cleaning of the machinery in a way that was dangerous. And all the available evidence indicates that Souza was not responsible for directing Plaintiff to do so, or administering any training or supervision to Plaintiff for his work.

As Defendants correctly note (ECF No. 48-1, pp. 6-7), supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of *respondeat superior*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Rather, to state a claim for relief under § 1983, a plaintiff must allege some facts that would support a claim that the supervisory defendant either: was personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

Here, there are no such allegations and thus the Court will recommend that Defendants' motion for summary judgment be granted to the extent that Souza be granted summary judgment. Likewise, the Court will recommend that Plaintiff's motion for summary judgment be denied as to Souza.

## V.   CONCLUSION, ORDER, AND RECOMMENDATIONS

Accordingly, IT IS ORDERED as follows:

1.   The Clerk of Court is respectfully directed to file a copy of Plaintiff's entire deposition transcript under seal.

2.   Within fourteen days of the District Judge's ruling on the parties' motions for summary judgment, to the extent that any claims remain, Defendants shall file an updated report regarding whether Defendants want the Court to set a settlement

conference. (ECF No. 43)

Additionally, IT IS RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 48) be granted, in part, and denied, in part. Specifically, the Court recommends that Defendant Souza be granted summary judgment and be dismissed from this action and terminated from the dockedt, and that Defendant Fagundes be denied summary judgment.

2. Plaintiff's motion for summary judgment be denied in its entirety. (ECF No. 47)

3. This action proceed only on Plaintiff's claim that Defendant Fagundes was deliberately indifferent to his safety needs in violation of the Eighth Amendment.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. Any objections shall be limited to no more than fifteen (15) pages, including exhibits. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**December 13, 2024**__               /s/ Erica P. Grosjean
                                                    UNITED STATES MAGISTRATE JUDGE